Entered: February 17, 2006 Case 05-30384 Doc 50 Filed 02/17/06 Page 1 of 4

Date signed February 16, 2006



DUNCAN W. KEIR
U. S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Baltimore

| | | |
|---|---|---|
| In Re: | * | |
| HELENA DELORES JAMISON | * | Case No.    05-30384DK |
| | * | Chapter    7 |
| | * | |
| | * | |
| Debtor(s) | * | |

## MEMORANDUM OF DECISION

In this Chapter 7 case, on or about November 29, 2005 the Debtor, in proper person filed with the Court a letter form of pleading asserting that Bay Country Finance Inc., a creditor secured by a lien upon Debtor's car (hereinafter "Creditor"), was telephoning the debtor demanding payments. Debtor enclosed a letter written by Creditor. After reviewing the Schedules and determining that Creditor was listed and therefore presumably received the notice of the case, on or about September 12, 2005, the court entered an order to show cause requiring Creditor and Heather Brewis, signer of the letter, (collectively " Respondents) to appear and show cause as to why they should not be sanctioned for violation of the automatic stay. Because the Debtor's letter did not indicate that a copy had been mailed to the Respondents, at the Court's instruction the Clerk sent a copy of Debtor's letter with a cover letter, to Respondents.

Respondents by counsel filed a response to the order to show cause arguing vociferously that Debtor's failure to serve the letter pleading prejudiced the Respondents.

The matter was heard by the Court on January 19, 2006. At the conclusion of the hearing, the court orally announced its ruling. This Memorandum of Decision further explicates the Court's findings and conclusions.

At the evidentiary hearing, Debtor testified as to the violative acts of Creditor. The Debtor testified that on or about the date that she filed her bankruptcy case (September 9, 2005), she telephoned Creditor's office in Glen Burnie. She spoke initially with an employee and was transferred to a Supervisor named "Dave." The supervisor suggested that she consult counsel and informed the Debtor that at such time as she received a discharge in the bankruptcy case, if she was not current on her car loan, the Creditor would be able to repossess the car.[1] The substance of this conversation does not appear to violate the automatic stay. The debtor initiated the call and the communication by the supervisor was informational as opposed to an improper demand for payment.

Thereafter at least two more telephone calls occurred between Creditor and Debtor. The evidence is not clear as who initiated the calls. Debtor characterized the conversations as Creditor calling Debtor wanting to know when was Debtor going to pay the loan payments. On November 3, 2005, Creditor sent a repossession letter to Debtor (Court's Exhibit 1), although the automatic stay precluded such collection activity. On November 4, 2005, Debtor wrote her letter motion to the Court which was subsequently served by the Clerk upon the Respondents.

Respondents first witness was Mr. David Danlagg, Branch Operations Manager for the Creditor. Mr Danlagg denied that Creditor had received the notice of bankruptcy mailed by the

---

[1] That information given by the supervisor was close to legally correct. Once a case is completed and closed, the automatic stay terminates as to actions against property of the estate. 11 U.S.C. § 362(c)(1)

Clerk at the inception of the case. He testified that the failure by the Debtor to include the suite number in the scheduled address may have caused its misdelivery.[2] In addition, he denied that he had ever spoken to Debtor. However he testified that he had personal knowledge based upon the records of Creditor that at least three telephone calls had occurred by and between Creditor and Debtor after the bankruptcy case was filed. According to Mr. Danlagg's testimony, the first call was in late September, 2005 when the Debtor informed Creditor's representative that Debtor had filed bankruptcy. Debtor promised to send the case number to Creditor. The second call occurred in mid October, 2005 and again the Creditor demanded that Debtor supply the case number. During the third call in late October, Mr. Danlagg testified that the Creditor did receive the case number from the Debtor.

Not withstanding these repeated conversations during which Debtor apprised Creditor of her filing of a bankruptcy case, on November 3, 2005 Creditor sent the repossession letter. This act caused Debtor to seek the Court's enforcement of the automatic stay.

Without regard to whether Debtor spoke with "Dave" during the first call in September, it is clear that Creditor willfully violated the automatic stay . Although Creditor had inquiry notice of the case filing after the call in late September and even knew the case number by late October, Creditor subsequently attempted to repossess the vehicle. Although Mr. Danlagg testified as to how information concerning a bankruptcy filing was inputted into the Creditor's system, this did not happen to prevent "the system" from generating the repossession letter.

Respondent's second witness was co-respondent Heather Brewis. Ms. Brewis testified that just prior to signing the repossession letter, she attempted to verify Debtor's bankruptcy filing by an

---

[2] Creditor is listed in the Schedules filed by the Debtor but the address provided does not include the suite number. No return undelivered of the notice of bankruptcy sent by the Clerk has been received by the Clerk according to the Court's records.

automated "hot line." When that did not disclose Debtor's filing, the letter was sent. However, by the time the "hot line" call was made, Creditor already had the case number. Ms. Brewis could not use that number to verify the filing because the information had not made its way into Creditor's system. In other words, Creditor did not even follow its own procedures as to notating bankruptcy filings on its computer system.

When debtor appeared and spent approximately two hours in prosecuting her contested letter motion, she testified that she had already worked two days non stop and would have to return to work shortly after the hearing concluded. The court in assessing the degree of violation, including that Creditor forced Debtor to appear and prove her motion even though Creditor knew it had sent the violative letter, determines from all facts and circumstances that Creditor should pay Debtor modest damages to compensate Debtor for her lost time and to discourage Creditor from future violations. The Court determines that the appropriate damage and sanction should be $400.

cc:   Debtor(s)
      Debtor(s)' Counsel
      Trustee
      U.S. Trustee
      All Other Parties-In-Interest

**End of Memorandum of Decision**